**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

THOMAS WOLF,                                  )
              Plaintiff,                         )
                                          )
     v.                                     )
                                          )     CAUSE NO.: 2:12-CV-208-PRC
CAROLYN W. COLVIN,                            )
Commissioner of the Social Security          )
Administration,                              )
              Defendant.                          )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Thomas Wolf on

May 23, 2012, and Plaintiff's Memorandum in Support of His Motion for Summary Judgment [DE

16], filed by Plaintiff on October 22, 2012.  Plaintiff requests that the November 15, 2010 decision

of the Administrative Law Judge to deny him disability insurance benefits be reversed.  For the

following reasons, the Court grants the request for remand.

**PROCEDURAL BACKGROUND**

On June 30, 2008, Plaintiff Thomas Wolf filed for disability insurance benefits ("DIB") with

the U.S. Social Security Administration ("SSA") alleging that he became disabled on November 17,

2007.   Plaintiff's application was initially denied on October 31, 2008, and again upon

reconsideration on January 21, 2009.

On April 23, 2010, Administrative Law Judge ("ALJ") Curt Marceille held a video hearing

at which Plaintiff and a Vocation Expert ("VE") testified.  On November 15, 2010, the ALJ issued

a decision finding Plaintiff not disabled and denying him benefits.  The ALJ made the following

findings under the required five-step analysis:

      1.      The claimant meets the insured status requirements of the Social Security Act
              through December 31, 2011.

2.      The claimant has not engaged in substantial gainful activity since November 17, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: Type II diabetes, obesity, impingement syndrome with arthritis of the acromioclavicular joints of the shoulders, degenerative disc disease of the lumbar spine, status post arthroscopy of the right knee with accompanying osteoarthritis, history of surgeries of the left knee with accompanying osteoarthritis, bipolar disorder, and depression with irritability (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift 20 pounds occasionally and 10 pounds frequently. Additionally, the claimant can stand or walk for 2 hours; sit for 6 hours; and never climb ramps, stairs, ladders, ropes, or scaffolds. Furthermore, the claimant can occasionally balance, stoop and crouch but can never kneel or crawl.

6.      The claimant is capable of performing past relevant work as a time card processor (DOT 210.382-014).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2007, through the date of this decision.  (20 CFR 404.1520(f)).

AR 13-24.

Plaintiff filed a request for review, which the Appeals Council denied on March 22, 2012.

Plaintiff now requests judicial review of the ALJ's November 15, 2010 decision, which constitutes

the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, the Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

**A.    Background**

Plaintiff was born in 1954.  He was 53 years old on his alleged disability onset date of November 17, 2007.  Plaintiff completed two years of college.  He previously worked as a route salesman, time card processor, and hospital patient transporter.

**B.    Medical Evidence**

*1.    Physical*

Plaintiff had five surgeries on his left knee in 1973, 1975, 1978, 1979, and 1989.  In 1990 or 1991, Plaintiff underwent surgery on his right shoulder.  In 1995, he underwent surgery on his left shoulder.  In 1996, he underwent surgery on his right knee.

In February 2006, Plaintiff saw treating physician Dr. Frederick Klepsch about pain in his left knee.  Dr. Klepsch determined that Plaintiff had adequate strength, full range of motion, and no instability in his lower extremities but that Plaintiff may eventually need a knee replacement.  In November 2006, Plaintiff returned to Dr. Klepsch complaining about right knee discomfort.  Dr. Klepsch noted that the review of Plaintiff's systems had not changed since the visit earlier that year. In both instances, Plaintiff was treated with a Depo-Medrol injection.

In April 2006, Plaintiff went to the emergency room complaining of back pain.  Plaintiff was advised to take pain medication as directed.  Also in April 2006, in her treatment notes following a check up, treating physician Dr. Sharon Harig indicated that she had advised Plaintiff to lose weight and quit smoking but that Plaintiff would probably do neither.

In June 2008, Plaintiff saw Dr. Klepsch complaining about right shoulder pain that had developed about two months earlier. Dr. Klepsch found that there were no abnormalities on inspection but that Plaintiff had tenderness at the anterolateral edge of the acromion process and that the impingement sign was positive. He had full range of motion and no instability. Dr. Klepsch had previously examined Plaintiff's shoulder in December 2002 and had found no evidence of a rotator cuff tear at that time. Plaintiff was treated in June 2008 with a Depo-Medrol injection and was given prescriptions for Naproxen and Celebrex.

In a July 2008 letter to the Disability Determination Bureau, Dr. Klepsch opined that Plaintiff can "do very sedentary activities such as sitting and occasional standing." AR 350. Dr. Klepsch further opined that Plaintiff can occasionally walk short distances and can lift objects but should not be required to lift anything over 20 pounds.

In August 2008, at the request of the State agency, Plaintiff underwent a consultative physical examination. The physician observed that Plaintiff had no tenderness in his spine and a full range of motion in his lumbar, cervical, and thoracic regions. Plaintiff also had normal strength in his upper and lower extremities. An x-ray of Plaintiff's lumbar spine showed only mild arthritic changes and narrowing. Plaintiff had a limping gait but was able to walk heel-to-toe and tandemly with use of a cane. Plaintiff was unable to stoop and squat without difficulty. He was able to get on and off the examination table with difficulty, but did not require any assistance. An x-ray of Plaintiff's knees was also normal.

On October 17, 2008, Dr. Fernando Montoya, a state agency reviewing physician, completed a physical residual functional capacity assessment and found that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, could stand/walk at least 2 hours in an 8-hour

workday, sit for a total of 6 hours in an 8-hour workday, and had unlimited ability to push and/or pull.  Dr. Montoya indicated that Plaintiff could only occasionally climb ramps/stairs, balance, stoop,  and crouch and could never climb ladders/ropes/scaffolds, kneel, or crawl.

In October 2009, Dr. Raymond J. Zimmerman, a treating physician, noted that Plaintiff reported blood sugar levels to be in the low 200s.  In December 2009, Dr. Zimmerman again examined the plaintiff and noted that Plaintiff reported his blood sugar to be around 150-180, which was near normal.  At that visit, Dr. Zimmerman noted that Plaintiff complained of left more than right knee pain, that he usually used Darvocet-N 100, and that the left knee sometimes feels as if it is going to give way.  Plaintiff reported that he had a knee brace but that he no longer used it. Plaintiff's blood sugar remained around 150 in February 2010.

2.     *Mental*

In his July 2008 letter to the Disability Determination Bureau, Dr. Klepsch opined that while Plaintiff has a history of depression, he does not have problems with understanding, memory, sustained concentration and persistence, or social interaction or adaptation.

In August 2008, Plaintiff underwent a consultative psychological examination.  Roger L. Parks, Psy. D., the examiner, diagnosed Plaintiff with bipolar disorder and issued a provisional diagnosis of obsessive-compulsive disorder.  Dr. Parks found Plaintiff to have a GAF score of 50.

In September 2008, treating psychiatrist Dr. Ara K. Yeretsian noted that Plaintiff's mood was stable and that Plaintiff reported not having any mood problems as long as he took his medication.

On October 29, 2008, Dr. F. Kladder, a state agency reviewing psychologist, completed a Mental Residual Functional Capacity Assessment and indicated that Plaintiff had no significant limitations in understanding and memory or in sustained concentration and persistence except that

Plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   Dr. Kladder found that Plaintiff was not significantly limited in adaptation and was not significantly limited in social interaction except that he was moderately limited in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.   In his narrative, Dr. Kladder opined that Plaintiff's symptoms and functional limitations were partially credible but that Plaintiff's contentions regarding the severity of his symptoms and related functional restrictions were not supported by medical evidence.   Dr. Kladder also opined that Plaintiff's impairment would likely interfere with complex task completion.

In December 2009, Dr. Yeretsian diagnosed Plaintiff with sleep apnea following a sleep study.

On April 6, 2010, Plaintiff was admitted to Methodist Hospital for taking 40-50 Darvocet pills.  Plaintiff indicated that he was depressed and heartbroken after visiting his son's family in New York.   The doctor determined Plaintiff was not a suicide risk and did not require psychiatric hospitalization.  Plaintiff was discharged on April 8, 2010.  He was readmitted to Methodist Hospital on April 17, 2010, because of suicidal behavior and discharged April 19, 2010.  Hospital physician Dr. R. Bhawani Prasad noted Plaintiff was much less depressed and no longer suicidal after this stay.

## C.   Plaintiff's Testimony

At the hearing held on April 23, 2010, Plaintiff testified that he often uses a cane and cannot walk for long periods of time.   Plaintiff also stated that he cannot sit for long periods of time and must keep his legs elevated because of swelling.   In addition, Plaintiff testified that he has trouble

with concentration and memory loss.  Plaintiff testified that he suffers from morbid obesity, sleep apnea, obsessive-compulsive disorder with bipolar and manic depressive, hypertension, type II diabetes, ulcerative colitis, degenerative joint disease, and depression and that he is nearing congestive heart failure.

Plaintiff stated that he took an involuntary retirement from his work as a patient transporter in 2007 because the job was very physically and mentally demanding.  Plaintiff previously worked as a hospital time card processor of paper time cards before his job was phased out when time keeping was moved to computers, which Plaintiff testified he does not know how to use.  In his application for DIB, Plaintiff indicated that he had to occasionally lift 50 pounds to put time cards into storage for this job.

Plaintiff stated that he sometimes spends 18 hours a day in bed.  Plaintiff testified that some days he is very irritable and does not want to get out of bed or talk to anyone.  Plaintiff stated that he does not do household chores such as cooking, cleaning, or mowing the lawn.  He stated he goes to Walmart about once a month but moves at a slow pace and must use a cart to steady himself.  Plaintiff testified that twice a year he does more walking than usual when he attends an upscale flea market.  He testified that he wears a knee brace and sits frequently during such trips.  Plaintiff testified that he visits his son in New York at least once a year, but that he must make stops during the trip and that his ankles become severly swollen after the drive.  Plaintiff testified that every few months he has a manic episode that makes it difficult for him to think clearly.  Plaintiff explained that these episodes have become more severe since he stopped working and that his doctor has been trying to find the correct dosage of medication to treat him.

Plaintiff testified that he occasionally receives cortisone shots in his knees but that doctors

are unable to do much for his back pain because he cannot bend his knees correctly.  Plaintiff stated that among the 12 prescription medications he takes are two painkillers, Propoxphene and Naproxen. Plaintiff testified that he takes perphenazine and veniafaxine to treat his obsessive-compulsive, bipolar, and manic depressive disorders.

Plaintiff testified that he becomes short of breath if he walks more than 100 feet.  Plaintiff stated he can lift about 10 pounds without any problem.  He testified that he can sit for 20 or 30 minutes before he has to get up due to pain but that, if his legs are elevated, he can sit for hours.

**D.    Vocational Expert Testimony**

At the hearing the VE testified that Plaintiff's past job as route salesman is classified as low end, semi-skilled light work by the Dictionary of Occupational Titles ("DOT"), as time card processor is classified as semi-skilled, sedentary work by the DOT, and as patient transporter is classified as unskilled, medium work by the DOT.  The ALJ asked the VE if a hypothetical person of Plaintiff's age, education, and past relevant work experience who can perform sedentary work but only lift 20 pounds occasionally, 10 pounds frequently, stand or walk up to two hours in an eight hour work day, sit for six hours in an eight hour work day, not climb ladders, ropes, scaffolds, ramps, or stairs but who can occasionally balance, stoop, and crouch, but never kneel or crawl and should have only occasional interaction with co-workers and supervisors could perform any of Plaintiff's past relevant work.  The VE answered that such a hypothetical person could not perform any of Plaintiff's past relevant work.

The ALJ then asked the VE if Plaintiff could perform any of his past relevant work if the ALJ found Plaintiff's testimony about his irritability and issues with being around others to be not credible.  The VE testified that if such a finding was made, Plaintiff could perform his past relevant

8

work as a time card processor. When asked by the ALJ to discuss the fact that Plaintiff's past work as a time card processor was using paper time cards and Plaintiff's opinion that the job no longer exists in that fashion, the VE testified that most jobs use a computer, that there are probably some companies that still use paper time cards, which would be outdated, and that computer skills are probably needed to perform a time card processor job correctly so he would probably need to learn computer skills.

When questioned by Plaintiff's attorney, the VE testified that a claimant who is off task more than 15 percent of the time would be eliminated from competitive employment as a time card processor.

## E.    The ALJ's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability and that he had severe impairments, but that he did not have an impairment or combination of impairments that met or medically equaled any of those included in the Listing of Impairments at 20 C.F.R. pt. 404, Subpart P, Appendix 1. The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not credible.

The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: he could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for up to 2 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday. He could not climb ladders, ropes, scaffolds, ramps, or stairs, and could only occasionally balance, stoop, and crouch. He also could never kneel or crawl. Regarding Plaintiff's mental impairments,

the ALJ determined that Plaintiff's impairments would likely interfere with complex task completion but that Plaintiff is able to do detailed tasks. Importantly, the ALJ found that Plaintiff could perform his past relevant work as a time card processor "as it is normally performed in the national economy." AR 24.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

10

664, 668 (7th Cir. 2004)).  "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings."  *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review."  *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To be found disabled, the claimant's impairment must not only prevent him from

11

doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing

20 C.F.R. § 404.1545(a)(3)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ's decision contains legal error and is not based upon substantial evidence.  First, Plaintiff contends that the case should be reversed for an award of benefits because Plaintiff cannot perform his past work and the evidence demonstrates that Plaintiff is disabled under the Medical-Vocational Guidelines.  Plaintiff then argues that, if a direct award of benefits is not made, the ALJ's residual functional capacity assessment as to both his mental and physical limitations is insufficient as a matter of law.  The Commissioner responds that substantial evidence in the record supports the ALJ's decision.

### A.    Medical-Vocational Guidelines and the Step-Four Finding

Plaintiff first argues that the ALJ's step-four determination, finding that Plaintiff was capable of performing his past relevant work as it is generally performed in the national economy, is not supported by the evidence because he does not have the requisite computer skills and because the exertional requirements of the job as he previously performed it are inconsistent with his RFC.  Under Medical-Vocational Guidelines ("the Grid"), 20 CFR Pt. 404, Subpt. P, App. 2 Rule 201.14, a finding of disabled is directed for an individual between the ages of 50 and 54 who has a high school education, no transferable skills or direct entry into skilled work, who can no longer perform their past relevant work, and who is limited to performing sedentary work.

However, prior to considering the Grid, if, at step-four of the sequential analysis, "the claimant can still perform the claimant's past relevant work given the claimant's [RFC], the claimant

is not disabled." *Phillips v. Astrue*, 912 F. Supp. 2d 749, 759 (S.D. Ind. 2012) (citing 20 C.F.R. § 404.1520(a)(4)); *see also Goffron v. Astrue*, 859 F.2d 948, 960 (N.D. Ill. 2012) ("Where a claimant's impairments prevent her from performing past relevant work, the ALJ must determine whether a significant number of jobs exist in the national economy that a claimant can perform and the Commissioner's Grid comes into play."). A claimant will be found to be "not disabled" if it is determined that the claimant has the RFC to perform "(1) [t]he actual functional demands and job duties of a particular past relevant job; *or* (2) [t]he functional demands and job duties of the occupation as generally required by employers in the national economy." SSR 82-61, 1982 WL 31387, *2 (Jan. 1, 1982); *see also Lauer v. Bowen*, 818 F.2d 636, 640 (7th Cir. 1987) (per curiam).

In making findings regarding the physical and mental demands of a claimant's past relevant work, the ALJ must assess detailed information about the job's requirements, including strength, endurance, manipulative ability, and mental demands. *See* SSR 82-62, 1982 WL 31386, *3 (Jan. 1, 1982). This information is derived from a "detailed description of the work obtained from the claimant, employer, or other informed source." *Id.* "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level." *Id.* "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." *Id.* The ALJ has a duty to explore any vocational inconsistencies that are apparent at the time of hearing. *See Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008).

In this case, the VE testified that most time card processor jobs are now done on computers, acknowledging that some companies may still use paper time cards as the Plaintiff did in his

14

previous employment, but that such a system would be outdated.  The ALJ found that Plaintiff can perform his past work as a time card processor as the job is normally performed in the economy, without specifying whether such work would be done with computers or paper time cards.  The substantial evidence of record does not support the ALJ's finding as to either manner of performing the job.

First, as to a computerized time card system, to the extent that the ALJ's ruling implicitly assumes that Plaintiff has the necessary computer skills to perform the job as it is normally performed in the economy by most companies, such a finding is in error.  Plaintiff testified that he does not know how to use computers.  Notably, the ALJ does not discuss the necessity of computer skills for the job or the VE's testimony that most companies use a computerized system.

Thus, the ALJ's finding that Plaintiff can perform the time card processor job as "normally performed in the economy" can only mean that the ALJ found that Plaintiff could perform that small number of jobs in which companies still use paper time cards, or, essentially, that Plaintiff could perform the job as he "actually performed" it.[1]  This finding is also not supported by substantial evidence because the evidence of record suggests that the exertional requirements of the job using paper time cards exceeds Plaintiff's RFC.  The ALJ found in Plaintiff's RFC that he could lift 10 pounds frequently and 20 pounds occasionally; however, Plaintiff stated in his application for DIB benefits that he lifted 50 pounds occasionally in his previous job as a time card processor, which exceeds the RFC.  At the hearing, the ALJ did not question Plaintiff about the lifting or other exertional requirements of this past work.  Contrary to the Commissioner's assertion in the response

---

[1] Although the number of such available jobs may be small, that fact is irrelevant as the Commissioner is not required to investigate whether a claimant's previous work exists in "significant numbers" in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 28-29 (2003).

brief, there was no evidence that the work as generally performed (when using time cards) did not require lifting 50 pounds occasionally. Social Security Ruling 82-62 "requires a careful appraisal of . . . the individual's statements as to which past work requirements can no longer be met," and "enough information on past work to permit a decision as to the individual's ability to return to such past work." SSR 82-62.

Because the ALJ's decision that Plaintiff could perform his past relevant work as it is generally performed in the national economy conflicts with the evidence of record, regardless of the decision's interpretation, the case must be remanded for further inquiry regarding the exertional requirements of Plaintiff's past relevant work as he actually performed it and how it is generally performed in the national economy. The Court denies Plaintiff's request for an automatic award of benefits under the Grid because further development of the evidence is necessary for a proper step-four determination.

**B.      Residual Functional Capacity**

Plaintiff argues that, if an award of benefits is not made under the Grid, substantial evidence does not support the ALJ's determination that Plaintiff could perform his past relevant work because of errors in formulating both the mental and physical RFCs. The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. The ALJ's RFC finding must be supported by

substantial evidence. *Clifford v. Apfel*, 227 F.3d at 870 (7th Cir. 2000).  In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p at *5.  In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may - when considered with limitations or restrictions due to other impairments - be critical to the outcome of a claim."  *Id.*

1.      *Mental RFC*

Plaintiff argues that the ALJ made several errors in finding that Plaintiff can perform the mental requirements of his previous job as a time card processor.  Plaintiff points to numerous psychological impairments identified in the record, as well as the ALJ's finding that Plaintiff is precluded from performing complex tasks.

First, Plaintiff argues that the mild limitations found by the ALJ in social functioning should have been included in the RFC.  While Plaintiff claims that the ALJ offered no support for his finding that someone with mild limitations in social functioning could interact with supervisors frequently (as the VE testified is required for Plaintiff's past work as a time card processor) rather than occasionally, this is incorrect.  The ALJ addressed this finding by explaining that Plaintiff's irritability was under control so long as Plaintiff was compliant in taking his medications, citing the evidence of record in support.

Second, Plaintiff argues that the ALJ failed to provide a proper basis for his rejection of the reviewing psychologist's opinion that Plaintiff had moderate limitations in social functioning and in concentration, persistence, or pace while simultaneously giving the psychologist's opinion great weight when finding Plaintiff is mildly limited in activities of daily living.  The opinions of treating

17

physicians are generally entitled to greater weight than those of examining physicians, and opinions of examining physicians are entitled to greater weight than those of non-examining physicians. 20 C.F.R. § 416.927(d)(1)-(2). As long as a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence" in the case record, the ALJ should give it controlling weight. *Id.* When well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence. 20 C.F.R. § 404.1527(c). An ALJ cannot substitute his judgment for that of a doctor by independently evaluating medical evidence. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Plaintiff does not contest the ALJ's well-supported finding that Plaintiff is mildly limited in activities of daily living. In finding that Plaintiff has mild difficulties in social functioning, the ALJ based his decision on the opinion of Plaintiff's treating doctor who refused to write a note for Plaintiff that his irritability was the result of anything besides failure to properly take his medication. The ALJ also considered Plaintiff's own testimony that he goes to trade shows and flea markets, as well as statements from Plaintiff's wife that Plaintiff goes out to dinner several times a month. The ALJ's reliance on the opinion of the treating physician along with evidence supplied by Plaintiff and his wife was appropriate. Thus, there was no evidentiary deficiency as argued by Plaintiff.

Regarding the ALJ's finding that Plaintiff has mild to moderate restrictions in concentration, persistence, or pace, Plaintiff makes only a general assertion that the ALJ did not rely on any contrary mental health opinions. But, this is not the case. The ALJ noted that the state agency psychological consultant found that Plaintiff could repeat a six-digit number forward and a three-

18

digit number backward, that Plaintiff was able to correctly perform serial sevens, and that Plaintiff's thought processes were rational and coherent. The ALJ also noted the unfavorable evidence that Plaintiff was unable to recall three items after ten minutes. After discussing the evidence, the ALJ reasoned that, "while the claimant may be limited in his ability to do complex tasks, this does not include an inability to do detailed tasks." AR 23. Thus, based on the evidence cited by the ALJ in support of his decision, the ALJ did not err in his finding that, taking the record as a whole, Plaintiff has only mild to moderate restrictions in concentration, persistence, or pace resulting in an inability to perform complex tasks. Notably, Plaintiff does not argue that the ALJ's limitation to non-complex tasks does not sufficiently account for his restrictions in concentration, persistence, or pace. *See O'Connor-Spinner*, 627 F.3d at 621; *Stewart v. Astrue,* 561 F.3d 679 (7th Cir. 2009); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

However, the ALJ did err by not including this limitation that Plaintiff cannot perform complex tasks, although he can perform detailed tasks, in the RFC. As argued by Plaintiff, the ALJ explicitly made a finding of this mental limitation and then failed to incorporate it in the RFC. On remand, the ALJ is directed to either incorporate this limitation in the RFC or provide a proper explanation, supported by the record, for why it is not included.

Third, Plaintiff argues that the ALJ erred by not including any mental limitations in the questioning to the VE. This is an inaccurate statement of the record, but the argument is ultimately successful as to the failure to incorporate a limitation as to concentration, persistence, or pace in the hypotheticals. When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. *See Young*, 362 F.3d at 1003. If appropriate, the question must account for documented limitations of concentration, persistence,

or pace. *Id.* at 1004. "The ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt*, 496 F.3d at 846.

At the hearing, the ALJ first asked the VE if a hypothetical person with Plaintiff's physical limitations who can only have occasional interactions with co-workers and supervisors could perform Plaintiff's past relevant work. The answer was no. The ALJ then asked the VE if the hypothetical person could perform the Plaintiff's past relevant work if it was found that Plaintiff's problems being around other people were not credible. The answer was yes. Thus, the ALJ did include in the hypotheticals a limitation regarding social functioning. Morever, because the ALJ applied the correct standard in the RFC analysis to determine that Plaintiff did not have any limitations regarding social functioning, the ALJ properly relied on the ALJ's response to the second hypothetical.

However, the ALJ erred by not including in the hypotheticals a limitation to work that does not involve complex tasks, which he found is supported by the record. As a result, the ALJ did not inquire of the VE whether someone who is precluded from performing complex tasks could perform Plaintiff's past work as a time card processor. The ALJ's caveat in his analysis that this limitation in the ability to perform complex tasks does not include an inability to do detailed tasks, does not cure his failure with regard to the hypothetical because this explanation was not provided to the VE either. On remand, the ALJ is directed to incorporate information about the Plaintiff's mild limitations in concentration, persistence, or pace in his hypotheticals as appropriate.

Finally, Plaintiff argues that the ALJ erred in failing to ask the VE if her testimony conflicts with the DOT. The Commissioner does not respond to this argument. SSR 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine

whether that testimony is consistent with the DOT: "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." *See* SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000). In the event of a conflict, the ALJ must ask the VE if the evidence she has provided conflicts with the information provided in the DOT, and, if a conflict exists, obtain a reasonable explanation for the conflict. *Id.* Plaintiff is correct that the VE's testimony appears to conflict with the DOT because Plaintiff's past job as a time card processor is listed as skilled in the DOT yet the VE testified that it is semi-skilled. As this case is being remanded on other issues, the ALJ is directed to make the proper inquiries of the VE's DOT testimony, if appropriate, on remand.

2.     *Physical RFC*

Plaintiff argues that the ALJ erred in properly analyzing Plaintiff's physical limitations, specifically Plaintiff's fatigue, use of a cane, and ability to sit.

First, as to the issue of Plaintiff's fatigue, an ALJ is required to analyze such claims. *Myles v. Astrue*, 582 F. 3d 672, 676-77 (7th Cir. 2009); *see also* SSR 96-8p. It is not enough for the ALJ to merely acknowledge or discredit a claimant's allegations; "specific reasons" supported by evidence must be given by the ALJ. SSR 96-7p. Plaintiff's complaints of fatigue and the need to lie down during the day are documented by medical evidence in the record. *See* AR 245, 247, 353, 372, 417, 418, 419. Although the ALJ acknowledged Plaintiff's fatigue as a non-severe impairment at step two of the analysis, he did not specifically discuss his reasoning for making such a finding. On remand, the ALJ is directed to analyze Plaintiff's fatigue.

Plaintiff further argues that the ALJ erred in not analyzing Plaintiff's sleep apnea and fatigue

in combination with Plaintiff's obesity.  Under SSR 02-1p the ALJ must specifically address the effect of obesity on a claimant's limitations.  *See* SSR 02-1p, 2002 WL 34686281, *1 (Sep. 12, 2002).  Obesity often leads to complications of the cardiovascular, respiratory, and musculoskeletal body systems and may contribute to loss of mental clarity, as well as slowed reactions caused by obesity related sleep apnea.  *Id.* at *3.  However, failure by the ALJ to explicitly discuss a claimant's obesity is harmless error if the ALJ's decision was predicated on medical opinions that discuss claimant's weight.  *Prochaska,* 454 F.3d at 736-37.  The ALJ's determination that Plaintiff's sleep apnea was not a severe impairment was based on examinations by treating physician Dr. Yeretsian conducted over the course of two years during which Plaintiff's weight was regularly noted.  While the ALJ's assessment did not specifically analyze Plaintiff's obesity in combination with sleep apnea, the ALJ did not err in failing to explicitly do so.  However, as the ALJ is being directed to further analyze Plaintiff's fatigue on remand, he is reminded to take Plaintiff's obesity and sleep apnea into account when determining the effect of fatigue on Plaintiff.

Plaintiff next contends that the ALJ failed to properly analyze Plaintiff's need to use a cane. The use of an ambulatory aid such as a cane does not require a prescription and the lack of a prescription does not alone discredit a claimant's testimony.  *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).  While the ALJ did not completely ignore Plaintiff's use of a cane in his RFC assessment, the ALJ did not mention Plaintiff's need to use a cane when performing a heel-to-toe walk as well as his need for an ambulatory aid while shopping. On remand, the ALJ is directed to discuss this additional evidence of his use of a cane and either incorporate Plaintiff's use of a cane into the RFC finding or explain why it is not included.

Finally, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's ability to sit. "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996). The ALJ noted Plaintiff's testimony that he can sit for 20-30 minutes, that he needs to elevate his feet when seated, and that his lumbar degenerative disc disease is a severe impairment that can cause pain that is worse when sitting. The ALJ discredited Plaintiff's complaints based solely on his testimony that he sits when he drives and that he does not elevate his legs while driving. However, the ALJ does not discuss the infrequency of Plaintiff's driving or the fact that when he drives approximately once a year to New York to visit his son, he shares the driving responsibility with his wife and that he suffers from severe swelling for several days upon his arrival which he treats with pain killers. On remand, the ALJ is directed to more thoroughly discuss the evidence related to sitting and driving and then to incorporate appropriate limitations in the RFC.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of His Motion for Summary and Judgment [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 18th day of July, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL AR. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

23